## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **LISA A. LACY,** | § |
| **PLAINTIFF,** | § |
| | § |
| **VS.** | § **CIVIL ACTION NO. 4:04-CV-364-Y** |
| | § |
| **JO ANNE B. BARNHART,** | § |
| **COMMISSIONER OF SOCIAL SECURITY,** | § |
| **DEFENDANT.** | § |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

A.      STATEMENT OF THE CASE

Plaintiff Lisa A. Lacy brings this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act.   Lacy applied for SSI benefits on September 10, 2001 (her protective filing date) and disability insurance benefits on February 25, 2002.  (Tr. 258).  She alleges disability since May 6, 1999 due to neck and shoulder pain.  (Tr. 56-57).  She met the requirements for disability insured status through the date of  the administrative

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–**Page 1**

decision. (Tr. 256).

After the Social Security Administration denied her applications both initially and on reconsideration, Lacy requested a hearing before an administrative law judge (the "ALJ"), and ALJ Herbert J. Green held a hearing on February 10, 2003 in Fort Worth, Texas. (Tr. 277). Lacy was represented by counsel. On March 14, 2003, the ALJ issued a decision that Lacy was not disabled because she could performed a modified range of sedentary work activity, and accordingly, she was not entitled to disability insurance or SSI benefits. (Tr. 12-18). The Appeals Council denied Lacy's request for review of her case, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.     STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is severe if it has more than minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 2

378, 392 (5th Cir. 2000). At the third step, disability will be found if claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A finding at any point in the five-step process that a claimant is disabled or not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is

more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C.     ISSUES

Whether the ALJ's determination is supported by substantial evidence.

D.     ADMINISTRATIVE RECORD

1.     Treatment History

Lacy was born March 4, 1968.  She has a high school education and obtained her beautician's license in 1986.  While working as a hair stylist on May 6, 1999, Lacy experienced the onset of pain in her neck, left shoulder, left arm, and left wrist. (Tr. 69).  A conservative treatment regimen consisting of hot moist packs, electrical muscle stimulation, and ultrasound was recommended.  (Tr. 70). Treating physician L. Kent Weldon, D.O., also prescribed physical therapy sessions three times a week, but employees at Weldon's office later reported that Lacy failed to attend physical therapy as scheduled.  (Tr. 80, 84).

Lacy told Weldon in September 1999 that she had recently reinjured her shoulder while in jail for unpaid tickets,  (Tr. 82), but nerve conduction and electromyography (EMG) studies performed October 5, 1999 were within normal limits.  (Tr. 75-76).  Weldon released Lacy from his care on October 29, 1999 for poor compliance with recommended treatment.  (Tr. 72).

Orthopedic surgeon Farooq I. Selod, M.D., examined Lacy on May 2, 2000 and opined that

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge–Page 4**

she had mild carpal tunnel syndrome bilaterally.[1]  Selod also evaluated Lacy on June 12, 2000 and forwarded a report to Lacy's worker's compensation carrier.  (Tr.88-91).  Although Lacy complained of diminished feeling in all five fingers, her complaints did not follow any dermatomal pattern and were considered invalid.  Her grip strength was within normal limits.  Tinel's sign and Phalen's sign were negative bilaterally.[2]  (Tr. 89).  Selod opined that Lacy had a 11% whole person impairment rating, consisting of a 5% impairment rating in her right wrist and 6% impairment rating in her left wrist.  (Tr. 89-91).  Selod also opined that Lacy had reached maximum medical improvement as of May 2, 2000.  Nerve conduction and EMG studies were repeated July 19, 2000 and again yielded normal results.  (Tr. 95-96).

Lacy sought treatment from John Malonis, M.D., on March 21, 2000.  She complained of discomfort and numbness in both wrists, but worse on the left.  (Tr. 101).  The numbness radiated into her arms and was worse with activity.  Lacy returned on August 29, 2000.  She walked with a markedly antalgic gait.  She was bent forward and complained of neck pain, trapezius tenderness, and bilateral arm pain.  (Tr. 99). Malonis ordered magnetic resonance imaging (an MRI) of Lacy's cervical spine.  The MRI was performed September 20, 2000 and showed minimal foraminal narrowing and a minimal annular bulge at C5-C6 that did not appear to contact the spinal cord.  (Tr. 102). Malonis recommended physical therapy with intermittent cervical traction.  (Tr. 98). Malonis

---

[1] Carpal tunnel syndrome is a complex of symptoms resulting from compression of the median nerve in the carpal tunnel, with pain and burning or tingling in the fingers and hand, sometimes extending to the elbow. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1751 (29th ed. 2000).

[2] Tinel's sign is a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve.  *Id.* at 1644.   Phalen's sign or Phalen's maneuver detects carpal tunnel syndrome by holding the wrist fully flexed or extended for 30 to 60 seconds or using a sphygmomanometer cuff on the involved arm.  *Id.* at 1054.

noted in a letter dated October 25, 2000 that Lacy had missed several appointments, but declined to find that Lacy had reached maximum medical improvement.  (Tr. 97).

Louise Lamarre, M.D., evaluated Lacy on March 2, 2001 at the request of Lacy's chiropractor.[3]  (Tr. 107).  Lacy exhibited some tenderness to palpation over her cervical spine and the supraspinatus and trapezius areas.  Her cervical range of motion was restricted.  Lacy reported an intermittent dull ache in her wrists and hands, but was not very symptomatic on the date of examination.  (Tr. 108).  Tinel's sign was negative and grip was normal, but Lacy was unable to raise her arms above her head.

Lamarre diagnosed acute intervertebral disc disorder of the cervical spine, upper trapezius tendonitis, and possible carpal tunnel syndrome bilaterally.  Lamarre prescribed Celebrex, epidural injections, and use of a transcutaneous electrical nerve stimulator (TENS) unit.   (Tr. 109).

Lacy sought treatment from Clinton Battle, M.D., beginning in early 2001.  She complained of severe pain in her neck, shoulders and both wrists that was accompanied by muscle spasms and headaches.  (Tr. 242-44).  Battle advised that Lacy needed to see a neurosurgeon or orthopedic surgeon for evaluation.  On examination, Lacy was tender to all range of motion in her neck and exhibited decreased range of motion in her shoulders bilaterally.  Lacy also exhibited tenderness and decreased range of motion in both wrists.  (Tr. 242).

Battle performed a functional capacity evaluation on May 31, 2001 and found that Lacy rated in the sedentary to light exertional category.  (Tr. 231).  Battle also performed an impairment rating

---

[3] Lacy's chiropractor, Rick Enlow, D.C., released her from care in April 2001 "due to circumstances which have created a barrier to patient-doctor communication."  (Tr. 110).

evaluation and opined that Lacy had a 19% impairment of the spine and a 23% impairment of her upper extremities, which equated to a 38% whole person impairment.  (Tr. 223-29).

Deepak Chavda, M.D., examined Lacy on July 18, 2001.  Lacy rated her neck pain as 10 on a scale of 10, her right shoulder pain as a 7, her left shoulder pain as a 5, and her wrist pain as a 5.  (Tr. 136).  Lacy had some point tenderness at her cervical spine and decreased range of motion.  Tinel's and Phalen's signs were negative, and deep tendon reflexes were brisk.  (Tr. 136).  Her shoulders showed no asymmetry or deformity with no discoloration, redness, or warmth, but Lacy exhibited positive acromioclavicular (AC) joint tenderness and mild impingement.  Her wrists were normal in an appearance with no effusion or swelling and normal range of motion.  Lacy had good grip and range of motion in all digits were normal and symmetrical.  (Tr. 137).  Chavda diagnosed cervical myositis sprain;[4] cervical disk bulge at C5-C6, bilateral mild shoulder impingement; and bilateral carpal tunnel syndrome. (Tr. 137).

Chavda performed an impairment rating assessment on August 3, 2001.  Chavda noted that Lacy performed the testing with poor effort and self-limiting results, and her observed range of motion was greater than the range of motion she demonstrated during formal testing.  (Tr. 121).  Chavda assigned a 4% impairment rating for Lacy's spinal disorder and 6% impairment of the upper extremities, totaling a 10% whole person impairment rating.  (Tr. 122).

Lacy saw neurologist Raymond LeBlanc, M.D., on July 25, 2001.  Lacy complained of neck pain and pain in her shoulders bilaterally, but worse on the right.  She also complained of arm pain

---

[4] Myositis is inflammation of a voluntary muscle. DORLAND'S at 1172.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 7**

and discomfort in both wrists.  (Tr. 118).  She denied having headaches, hearing problems, or vision changes.  Lacy demonstrated normal flexion and extension in her neck, but rotation was limited to forty degrees bilaterally.  Deep tendon reflexes were intact in the upper and lower extremities.  Lacy demonstrated a mild change with sensory testing at C6-C7.  Motor strength was intact in both her upper and lower extremities, with mild restriction of rotation of her shoulder muscles bilaterally. LeBlanc noted that the MRI scan from September 2000 was essentially negative.  (Tr. 119). LeBlanc diagnosed chronic cervical syndrome and chronic shoulder syndrome.  He had no treatment to offer and referred Lacy back to her current treating physician.  (Tr. 119).

An MRI of Lacy's right shoulder was performed on November 7, 2001 and showed increased signal intensity that could represent a mild tendinopathy or small partial tear.  (Tr. 177-78).  An MRI of her left shoulder showed several cysts suggestive of early osteoarthritis, but was otherwise unremarkable.  (Tr. 178-79).

Lacy was evaluated by surgeon Paul Phillips on February 28, 2002.  Phillips recommended shoulder surgery, but declined to proceed with the surgery until Lacy's cervical disc disease was corrected.  (Tr. 199).

Lacy saw Barry Beaty, D.O., on March 19, 2002 for complaints of neck and shoulder pain radiating into her arms and wrists.  Lacy reported that she was told that she needed shoulder surgery, but surgery could not be performed because of cervical disk disease.  Beaty diagnosed chronic shoulder strain and chronic cervical strain.  He opined that Lacy could be helped with physical therapy and use of non-steroid anti-inflammatory medications.  (Tr. 183).

Battle ordered another MRI, which was performed June 12, 2002 and was consistent with

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 8**

mild spondylolithesis.[5] (Tr. 193, 245).  Battle referred Lacy for evaluation for surgical intervention.

(Tr .193).

      2.      Administrative Hearing

      At the administrative hearing, Lacy testified that she could not work because of the pain and

loss of function in her neck and shoulders.  (Tr. 281).  She complained she was unable to lift her

arms above a forty-five degree angle and had to ask her daughter to get items out of a cabinet.  She

also had difficulty using her arms to cut up food on her plate.  (Tr. 282).  She had recently been

referred to a surgeon to repair a rotator cuff tear in her right shoulder.

      Lacy spent the day watching television and doing light housework.  (Tr. 283).  She avoided

clothes with buttons because she had difficulty using her hands, and she relied on her daughter to

fix her hair.  Lacy also wore slip-on style shoes because she had difficulty tying shoelaces.  She slept

for four or five hours a night, and had difficulty finding a comfortable position.  Lacy was able to

drive, but was unable to turn her head to check for approaching traffic when she was changing lanes.

(Tr. 287).

      Vocational expert Dillon Snowden also testified at the hearing and classified a beautician

as a light, skilled occupation.  (Supp. Tr. 289A).  The ALJ asked Snowden to

> assume an individual the Claimant's age, education and work experience.  Assume
> further that the individual is limited to sedentary work, cannot repeatedly use the
> dominant arm.  The individual has a less than moderate concentration deficit and
> cannot raise her dominant arm above shoulder height.

(Supp. Tr. 289A).  Although a claimant with these restrictions could not perform as a beautician, the

---

    [5] Spondylolisthesis refers to the forward displacement of one vertebra over another.  *Id*. at 1684.

**Findings, Conclusions and Recommendation of**
**the United States Magistrate Judge**–Page 9

vocational expert identified other jobs that would be available, including work as a machine tender, bench inspector, and surveillance system monitor.  (Tr. 16; Supp. Tr. 289A-290).

     3.      ALJ Decision

The ALJ found that Lacy had not engaged in substantial gainful activity since May 6, 1999. He also found that her shoulder, neck and right arm pain was a severe impairment, but failed to meet or equal the severity of any listed impairment.  (Tr. 17).  In assessing Lacy's residual functional capacity, the ALJ limited her to sedentary work with no repeated use of her right (dominant) arm, no raising of her right arm above shoulder height, and accommodation of a less than moderate concentration deficit.  (Tr. 17).  Based on the vocational expert's testimony, the ALJ concluded that Lacy was not disabled because she was capable of performing other work available in significant numbers in the national economy.  (Tr. 17-18).

     4.      Appeals Council Evidence

In support of her request for Appeals Council review, Lacy submitted evidence that she had arthroscopic surgery on her right shoulder with an open subacromial decompression on March 24, 2003 to relieve her shoulder pain and impingement syndrome.  (Tr. 249).  The Appeals Council determined that Lacy's additional post-hearing evidence confirmed her shoulder injury and reflected additional treatment to address her symptoms, but showed no significant changes in her condition that would warrant disturbing the ALJ's determination.  (Supp. Tr. 2A-2B).

D.     DISCUSSION

Lacy asserts that the ALJ's written decision contains numerous factual errors that call into question the soundness of his decision.

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge**–Page 10

Lacy disputes the basis for the ALJ's reference to her failure to keep appointments and comply with recommended treatment.  She insists that she voluntarily left the care of several physicians because she was unhappy with the care they provided, and she accuses her insurance carrier of arranging the records to make her look bad.  The ALJ, however, was accurately summarizing notations in the medical reports.  (Tr. 16).  Substantial evidence supports his determination that Lacy was not always compliant with her recommended treatment regimen.

Lacy also contests the accuracy of Beaty's report that she has no mobility problems.  (Tr. 182).  But even Lacy has limited her complaints to neck, shoulder and arm pain, and she has few complaints about impairment in her ability to walk.  Treating physician Battle and other examining sources have likewise focused on Lacy's cervical region and upper extremities.

Lacy also asserts that fifteen physicians have opined that she is unable to work.  The administrative record does not contain fifteen disability opinions.  Additionally, opinions on a claimant's ability to work are not medical opinions and are never controlling because they relate to an ultimate disability issue that is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Lacy also notes that she underwent shoulder surgery just weeks after the ALJ's decision and provided the Appeals Council with copies of her surgical report and related records.  However, the ALJ had accounted for the restrictions imposed by a rotator cuff tear and shoulder injury when he assessed Lacy's residual functional capacity.  The subsequent repair of that injury does not present a basis for disturbing the ALJ's assessment or remanding the case for further consideration.

Lacy complains that the ALJ mistakenly identified Selod as a state agency physician and

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 11**

misrepresented the breadth of Selod's examination.  The ALJ correctly summarized Selod's findings

and recognized that Selod was an orthopedic specialist and an examining physician.  (Tr. 14).

Lacy's confusion stems from the ALJ's review of the opinions offered by the nonexamining state

agency medical consultants.  The ALJ erroneously referred to Exhibit "3F" in his discussion of the

state agency records.  Exhibit 3F contains Selod's records.  The state agency medical consultants'

findings are actually found in Exhibit "15F."  However, the ALJ's summary of the state agency

findings is drawn from the information found in Exhibit 15F and there is no apparent harm to Lacy

despite the ALJ's citation to an incorrect exhibit number.  (Tr.  15, 184-91).

   Lacy complains of the ALJ's failure to address the 38% impairment rating assessed by her

treating physician Clinton Battle.  (Tr. 223-29).  The ALJ did not specifically address every piece

of evidence, but the Fifth Circuit has declined to prescribe any rigid or set formula for the ALJ to

follow when articulating the reasons underlying his decision on disability.  *See Falco v. Shalala*, 27

F.3d 160, 163 (5th Cir. 1994).  The social security disability process culminates with a finding of

disabled or not disabled, not a finding of a percentage of disability.  Although the ALJ did not

specifically address Battle's impairment assessment, the ALJ did limit Lacy to sedentary work

consistent with Battle's opinion, (Tr. 16, 231), and accommodated Lacy's restricted ability to use

her dominant arm.  The ALJ cannot pick and choose among the evidence, but need not mention each

and every piece of evidence in the file so long as he has developed the record fully and fairly and

has sufficiently articulated the basis for his decision.  *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.

1996); *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993).  The ALJ's written decision reflects an

adequate review of the evidence, and substantial evidence exists to support the ALJ's determination.

RECOMMENDATIONS

It is recommended that the Commissioner's decision be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED
 FINDINGS, CONCLUSIONS AND RECOMMENDATION
 AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until August 23, 2005. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until August 23, 2005 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the

**Findings, Conclusions and Recommendation of
the United States Magistrate Judge–Page 13**

opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED AUGUST 2, 2005.


/s/ Charles Bleil
_____
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE